Good morning again, Your Honors. I am still Saul Huerta, and this time I represent Mr. Carrasco-Chairez. This is a simple issue of official restraint, and actually there is more information in this case than in the previous one, so I'll go through a couple of the facts that were presented to the jury in this case. There was testimony from basically two agents, Agent Pimentel, who was the third person with law enforcement to see him, and then Agent Poirier, who was the case agent, he happened to testify because he knew about the area, and the basic information they provided was this, in general and specifically. Agent Pimentel said that there were two individuals by the border fence, and a camera operator called that in to him and his partner. I don't know who the camera operator is. Then he said his partner, that's Agent DeBoer, arrived on the scene first, and when he arrived, when Agent Pimentel arrived, he sees Agent DeBoer speaking with two individuals. He said about 10 to 15 feet from the wall that separates Mexico from the U.S. Now, he also said that he asked the individuals, excuse me, Mr. Carrasco-Chairez, what time they crossed, and the person said about 2.45. He then looked to see what time he had been called in, and he saw that that was 3 o'clock, so he assumed that it was 15 minutes that the two individuals had been standing 10 to 15 feet by the border. This is all the information that we have because we don't have Agent DeBoer testify, who was the first one to arrive, or the camera operator who saw them testify as to what the camera operator saw. Now, Agent Pimentel testified that the camera operators can see the fence. They can see the wall. They can see people coming over the wall. They may not see them. They may have the camera somewhere else, but they may have the camera right on there. Additionally, he … Well, they might, but if they didn't see him until, let's say, 10 minutes after he was already over the border, tough luck, right? That's correct, Your Honor. Yes. So there's no evidence that they did see him before that, and there is some evidence, is there not, that as soon as these guys were contacted, the agents were contacted, they picked him up once they were contacted, which took them about maybe a couple minutes to get there. That's correct. What we don't know is whether or not there actually were 15 minutes because … We don't know what? We don't know what 15 minutes lapsed between his entry and the time that the agents arrived. Well, he said it was. Right, but he didn't check his watch, and I'm sure he wasn't … I don't know if he had a watch on to know what time he entered. We're talking about whether there's evidence. We're not talking about what arguments you can make about why somebody should think something different. I suppose you told the jury that. I'm sorry. I didn't hear the question. I suppose you argued that question. The point is we're not talking about whether the evidence can be read another way. We're talking about whether the government had evidence that indicated, sufficient evidence to indicate, he'd been in the country for, say, let's say five minutes, ten minutes, without official observation. Well, but we, and again, because we don't have the camera operator's testimony, and I think that's crucial. I think the crucial part in a lot of these cases is you need to have the testimony of the arrest … Well, I don't know any case that says you have to have the testimony of the camera operator. What's the best case that says you must have the camera operator's testimony? Well, it's not the camera operator. I guess of all the cases that were cited by the government, looking through them, in all those cases, the first officer to make contact with the person was testified and was able to tell … I think this is a very thin case, to be honest, and it would be very easy for the government to put on a case to meet its burden if, indeed, that's what happened. So then we're left with these harder cases like the one you've brought us. But my one question is we had a published case, this Bello-Bahena case. Bello-Bahena, yes, Your Honor. Yeah, Bello-Bahena. And so my question is how does your case differ? Because I thought there they were also missing potentially that first person. Were they or were they not? They were missing the first person, Your Honor. The difference is in Bello-Bahena, Officer Drake called out to Officer Rodriguez and told them, I have seen a certain number of individuals in this location. Agent Rodriguez testified that location is a mile from the border. Agent Rodriguez went and arrested those individuals. The case was so remanded for a new trial for an official restraint instruction to be given. That's actually my question. You didn't raise that as an issue on appeal, the absence of an official restraint instruction. Did you request that instruction in this case? Yes, I did, Your Honor. It was part of my request. I think we broke one day and I requested it the next day. I'm not sure if it's in the excess, but I did request it and the court denied it. Well, that's my recollection as well. And what I'm a little bit unclear about is why that's not an issue on appeal, because given our precedent, that appears to have been an instruction that would have been required in this case, and yet you haven't presented it as an issue for us on appeal. And I'm not certain whether we can give you any relief. Well, Your Honor, I guess the reason was because I requested the court grant the Rule 29 motion, which was done ahead of time. I think that based on those facts, in Bay of Baena, we're talking about a very large expanse. You're talking about a mile away. And the first agent who saw them didn't testify, but what the other agent testified to was that the first agent who saw them a mile into the country. The agent that testified in this case testified that my partner was already there with them, 10 to 15 feet away from the wall, and we were there because the camera operator called us over. The difficulty is that the standards for Rule 29 are different than failure to give the jury instructions. So you intentionally didn't raise the question on appeal. It's waived, right? As to the jury instruction, it is, Your Honor. Okay. So I'll reserve the rest of my time, Your Honor. You may do that. May it please the Court, Your Honors. I'm Angela Woolrich, appearing on behalf of the United States for the District of Arizona. Sufficient evidence was presented in the trial in this case for any rational juror to conclude that the defendant illegally reentered the United States, and a reasonable juror was justified in finding that the defendant was not under official restraint the entire time he was present in the United States. The district court, therefore, did not err in denying the defendant's Rule 29 motion for judgment as well. It seems to be a very close case to me on the facts. You may very well be right. But we do have cases that talk about a very, very brief lapse in observation, not removing official restraint. Those cases usually have involved a few seconds, and here you have 12 or 13 minutes or something like that. Talk to me a little bit more about why this case fits within the precedent that would allow the conviction to stand. Your Honor, the cases where we have the very brief lapse where, and I believe the language is split seconds, where, for instance, the defendant is rounding a corner, he's found to still be in the clutches of the government officials. In those cases, there was also evidence that that particular defendant was spotted before he actually made entry, as he was crossing the border or scaling a fence or climbing a wall, and actually seen landing, setting foot for the first time, that first moment in the United States, and at all times was in fact in the clutches of the government official and in the clutches of the agents. So here we have relatively or apparently constant surveillance of the fence area, and he's seen basically at the base of the fence. Well, and, Your Honor, that's where the difference is. We actually have evidence presented that there are cameras that pan the area, but we don't have fixed surveillance. In fact, I think the testimony was clear from two separate agents that these cameras pan back and forth, that this is an area of extremely high traffic, was what one of the agents testified, Agent Poirier testified to, that there are numerous obstacles to observation there. There are vehicles. There are structures. There are buildings. There's heavy pedestrian traffic, as well as vehicular traffic. This is not a remote desert area, as in some of these cases, but this is the downtown area of a busy border city. So we would have to assume that he sort of jumped the fence and then hung out there for 12 to 15 minutes until the officer you did put on was able to testify that he saw him. Is that right? Well, we wouldn't necessarily have to assume that, Your Honor, although that is one possibility, and I believe it was Agent Poirier that talked about it's very common for individuals to jump the fence and then hide. There's lots of places for them to hide, either vehicles, structures in that area, to hide basically to avoid detection, because there is a large Border Patrol presence in that area. However... But who bears that burden to show that he wasn't under constant surveillance? It's the government's burden to show that the defendant did make entry in the United States. And, of course, part of that is that he was not under constant surveillance the entire time. So what is your best case that he made entry as we have this legal fiction that we now carry out under that rubric? Well, Your Honor, I think that there are a few cases that support that that entry was actually made in this case. I think that Castellanos-Garcia is very instructive on this case, and it tells us that the government isn't required to refute any possible speculation. And that's what the defense is doing here. Well, wait a minute. You seem to be arguing inconsistently with your previous statement, which I think was a correct statement. That is that the government bears the burden to demonstrate that he was not under official restraint. That is correct. Okay. And, Your Honor, it's our position that the evidence presented at that trial was sufficient to support the jury's finding that he was not under official restraint the entire time. That's based on his statement that he had been present in the United States illegally for 15 minutes before his apprehension. That's based on the evidence that the cameras panned the area and that there are numerous obstacles that would allow someone to be along the border area undetected for a period of time. That's based on the agent's statement several times over that the camera operator called out that these individuals were spotted by the fence and not on the fence. In fact, the only evidence that the defendant had crossed the fence at some point was his own statement that he crossed the fence about 15 minutes previously. We don't know that he crossed the fence near where he was picked up or perhaps a mile down the road from where he was apprehended. So there was no evidence presented at trial to refute the government's position that he was present for some time, for up to 12, 13 minutes, but even for a brief moment prior to being spotted and apprehended. It strikes me that after the absolutely scintillating opinion in Pacheco-Medina, our court, which could be read expansively, our court has pretty much narrowed its concept, and Castellanos, I think, was written by the same person who wrote Pacheco. We've pretty much narrowed the whole concept, and yes, the government, I think we said, does have to prove that, but it doesn't take very much evidence to allow a jury to find that he was not, that he did enter the country. If the defendant wants to offset it, he better come in with something beyond the minimal evidence it takes for the government to shift the burden of going forward with the evidence and not the burden of persuasion. Is that about right? That's exactly true, Your Honor, and I would agree that that's what happened in this case. Unlike in Pacheco-Medina, where the evidence was that the defendant was actually seen from before he set foot in the United States, as he began crossing, as he was on the fence, and he was actually seen by agents landing in the United States, that was not the evidence. He was lost for a second when he turned a corner or something. Correct, correct. In contrast, this case, the evidence that the government presented was that the defendant was first spotted when he was already in the United States, and, Your Honor, that evidence was sufficient to support the jury's finding in this case. And the defendant has presented only speculation that he could have been observed prior to that point, but as our case law tells us, speculation is not enough to overcome the evidence that the government did present, which was sufficient in this case to support the jury's finding. The problem that's occurring in this area, and I think we keep seeing the cases, we're fairly relaxed about how much the government has to put on, but the government seems to keep wanting to slice it thinner and thinner and thinner and thinner. And, you know, one of these days, I don't know if it's this case or another case, you're going to find you sliced it too thin. This is a good example. Why didn't you bring the guy who first got him? Your Honor, I... For example, why didn't you have the camera people say, no, we didn't see him come over the board. The government just tries to be just as skinny as they can, it looks like to me, and you're going to get too skinny someday, and there's going to be a problem. And, Your Honor, I understand the concern. I think that this case is very similar to another case that we have in, excuse me, I'll find the name, but where we have the, it was the Ruiz-Lopez case, where the first agent has no recollection, perhaps, of what happened. A camera operator that does this duty constantly over and over and constantly is calling out evidence that may have no recollection to this particular event. However, we have to rely on, again, the common practice, which we did have evidence in this case that it was common practice for the camera operators to pan back and forth and call out any suspicious activity as we see it. So, just as in Ruiz-Lopez, evidence of common practice was probative, the government did provide that evidence in this case as well, as far as what the common practice was for the camera operators in that area that would see this type of activity. So, Your Honors, the district court did not err in denying the defendant's Rule 29 motion because the evidence was sufficient to support the jury's finding, because a rational juror could conclude, based on the testimony of the agents, based on the statement of the defendant that he had been present in the United States for 15 minutes prior to his apprehension, and based on the evidence that the defendant was first spotted when he was already in the United States as opposed to entering the United States, that a rational jury was justified in finding that the defendant did enter the United States at some point free from official restraint. Thank you, counsel. Mr. Murphy, you have some rebuttal time remaining. And, Your Honor, I want to be clear when I went over the facts that were presented to the jury. You know, I very highly doubt that it was 15 minutes. Obviously, the jury could have found 15 minutes. It wouldn't be that big an issue to them whether they were standing there for 15 minutes or not. My main point about it was that it was information presented to the jury, even though we did not agree with it. Now, as to the cameras moving around, I understand that. However, both agents, first, even agent, excuse me, Pimentel, who was the second agent to show up on scene, said that many of the calls that they get are when they see someone come over the fence. Now, it doesn't mean that that's what happened this time. The camera operator would be the person to know. Additionally, agent Poirier, who had worked in the area, said that there may be cases where the camera may pick up, sorry, this is excerpts of record, page 34, and most, excuse me, there may be cases where the camera may pick up some people just a little bit north of the border. If they seem suspicious and when agents show up, the camera will pan away to the southern portion to make sure there are no threats coming over the fence, meaning sometimes they'll stay on. And earlier, excuse me, earlier on in that page, he said if they see something, typically it's Border Patrol agents that are using those cameras. So when they see something suspicious, they will stay with that, which is understandable because sometimes you're working the camera and sometimes you're the one showing up to the area. And so, Your Honor, my point isn't that the camera operator did or did not see him, whether he was there for five minutes or not, but if all you have to show is that at some point some agent saw him, so there's no official restraint, you've shifted the burden. Now, Castellanos-Garcia is far afield. In Castellanos-Garcia, an agent saw, the agent testified, I'm assuming from the way the case is written, that about 100 yards in, he saw this individual and he arrested him. So the court found he was free from official restraint for those 100 yards. The argument in that case was, well, but there were 15 other agents in the area and one of them could have seen him, so why didn't you call all 15 of those people? I'm not asking for all of the Nogales Border Patrol stations to come and testify that they did not see Mr. Carrasco-Chavez prior to him coming over the fence. The only evidence I think that was required for the government to be able to avoid a Rule 29 is either Agent, well, Agent DeBoer and the camera operator whose name, sadly, I don't know, it's referred as KAK-865, whoever was working that camera at that time. But, Your Honor, when you get to this point, you can imagine, as Judge Fernandez, you've mentioned, well, one of our agents saw him at some point in time, back at the police station, one of our agents saw him, so that's good enough. We don't have to bring the other ones in. I think that is not, that is shifting the burden to our side, and it's, I don't think it's allowed under Pacheco-Medina because it is the government's burden to prove that the person was under, was not under, for at least a few seconds. It doesn't matter. What I'm saying isn't that he was free all that time or he wasn't free any of that time. What I'm saying is the government didn't show that at some point in time they saw him and that he was free in this country. And so for that reason, Your Honor, I would request that the Rule 29 motion be recorded. The case be dismissed. Thank you, counsel. The case just argued is submitted, and we appreciate very much the work of both attorneys.
judges: Fernandez, Graber, McKeown